UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSE ANTHONY TORREZ,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    Case No. 3:17-cv-1232 (SRU) |
| SCOTT SEMPLE, et al.,<br>    Defendants. | :<br>:<br>: |

## **INITIAL REVIEW ORDER**

The plaintiff, Jose Anthony Torrez ("Torrez"), was formerly incarcerated at the MacDougall-Walker Correctional Institution. He has filed a civil complaint under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. regarding an incident that occurred in December 2014 at Manson Youth Institution ("MYI"). He names Commissioner Scott Semple, Warden John Alves, Deputy Warden Thomas Hunt, Lieutenants Castro and Archer, and Correctional Officers Todd Ketchum, Ruggiero, and Lis as defendants.

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief

that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

Torrez alleges that he has been classified as a seriously mentally ill individual. Compl., Doc. No. 1 at ¶ 12. He claims to suffer from various mental health conditions including bipolar disorder, depression, post-traumatic stress disorder, attention deficit disorder and hyperactive disorder. *See id.* at ¶ 13. He has taken medication and has undergone therapy to treat his disorders. *See id.* at ¶ 14. Torrez claims that he has engaged in "mania . . . acts of self-harm associated with mental health" and "has suicidal ideations." *Id.* at ¶ 15. On September 23, 2014, prison officials at MYI placed Torrez on Behavior Observation Status for attempting to commit suicide. *See id.* at ¶ 37.

On December 26, 2014, Torrez was standing in between cell eleven and cell twelve of D-Cottage, A-Wing, when he observed a physical altercation between two inmates. *See id.* at ¶¶ 16, 20. As he watched the altercation, two inmates and two pretrial detainees assaulted him. *See id.* at ¶ 20.

Officers Ketchum and Ruggiero stood by and watched the assault on Torrez, but made no effort to intervene to assist Torrez. *See id.* at ¶¶ 21-22. Eventually, Torrez was able to flee from his attackers. *See id.* at ¶ 23. After other prison officials responded to the scene of the altercations, an official handcuffed Torrez. *See id.* at ¶¶ 24-25. Torrez was "drenched in blood" and his left eye was closed shut. *Id.* at ¶ 26. Torrez suffered a laceration under his right eye, a

2

hematoma around his right eye and an abrasion to his elbow. *See id.* at ¶ 27.

Torrez claims that Commissioner Semple, Warden Alves, Deputy Warden Hunt and Lieutenants Castro and Archer were aware of his mental health conditions and should have housed him in G-Cottage which was the mental health unit at MYI. *See id.* at ¶ 32. Four of the seven individuals involved in the altercation were pretrial detainees. *See id.* at ¶ 35. At the time of the altercation, Torrez was a sentenced inmate. *See id.* at ¶ 34.

Lieutenants Castro and Archer placed Torrez in administrative segregation after the altercation and deprived him of his mail, telephone, commissary and visiting privileges. *See id.* at ¶ 29. In addition, Torrez lost good time credits. *See id.* Torrez claims that if Lieutenants Castro and Archer had viewed the video of the altercation, they would have observed that he was only attempting to defend himself from being assaulted and therefore should not have been placed in segregation and should not have lost any privileges. *See id.* at ¶ 30.

Torrez states that Officer Lis was a phone monitor at MYI. *See id.* at ¶ 31. Torrez suggests that if Lis had listened carefully to telephone calls made by two of the inmates who were participants in the altercation on December 26, 2014, he would have overheard the inmates discussing conduct involving a risk of harm to other inmates and to the security of MYI. *See id.*

Torrez asserts that he suffers from a mental health disability and Commissioner Semple, Warden Alves, Deputy Warden Hunt and Lieutenants Castro and Archer discriminated against him because of his disability by subjecting him to punitive segregation, assault, restrictive conditions of confinement and denial of various privileges. *See id.* at ¶¶ 42-43. Torrez contends that the defendants have violated his rights under the ADA by failing to place him in the "most integrated setting appropriate for his needs." *Id.* at ¶ 47. In addition, they have violated his

rights under the Connecticut Patients' Rights Act. *See id.* at ¶ 49.

Torrez states that during his 10-day confinement in punitive segregation, officials denied him items of his property, use of the mail and telephone and the opportunity for recreation. He was confined in his cell for twenty-fours a day during that period. *See id.* at ¶ 45. On January 6, 2015, officials released him from punitive segregation and transferred him to Cheshire Correctional Institution. *See id.* at ¶ 50. On January 30, 2015, prison officials released Torrez from imprisonment. *See id.* Torrez made no effort to exhaust his administrative remedies relating to his claims prior to his release from prison. *See id.*

## I.    Section 1983 - Eighth Amendment Claims

Torrez generally asserts that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. He claims that the defendants confined him under conditions that exacerbated his mental health conditions and that the defendants violated his right to be free from assault by other inmates.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials, to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation marks and citations omitted).

To state a deliberate indifference to health or safety claim under the Eighth Amendment, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a

"sufficiently serious" deprivation, such as the denial of a "life[] necessity[y]" or a "substantial risk of serious harm." *Id.* at 834 (internal quotation marks and citations omitted). To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See id.* at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that an inmate allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006).

Deliberate indifference by prison officials to a prisoner's serious medical or mental health needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Jareck v. Hensley,* 552 F. Supp. 2d 261, 264 (D. Conn. 2008) (applying Eighth Amendment deliberate indifference standard to inmate's claim of denial of treatment for mental health conditions); *Atkins v. County of Orange,* 372 F. Supp. 2d 377, 408 (S.D.N.Y. 2005) ("In the Second Circuit, it is equally clear that psychiatric or mental health care is an integral part of medical care and falls under the rule laid out in *Estelle* which requires that such care be provided to prisoners.") (internal quotation marks and citations omitted). To state a claim for deliberate indifference to a serious medical or mental health need, an inmate must meet a two-pronged test. Under the first prong, an inmate must demonstrate that his or her medical or mental health need was "sufficiently serious." *Salahuddin*, 467 F.3d at 279. Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition

"significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quotation marks omitted). Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions. *See Salahuddin*, 467 F.3d at 279-80.

### A. Failure to Protect Claim

Torrez generally asserts that the defendants disregarded a risk to his safety by subjecting him to conditions of confinement described in the complaint and failed to take any corrective action. Specifically, Torrez contends that if defendant Lis, who was a phone monitor at MYI in 2014, had paid more attention to inmate telephone conversations, he would have heard two inmates, who were involved in the altercation that occurred on December 26, 2014, discussing "a potential risk of harm to other inmates safety and the security of [MYI]." Compl., Doc. No. 1 at ¶ 31. Torrez suggests that if defendant Lis had performed his monitoring job properly, the incident involving the altercation would not have occurred. Torrez claims that defendants Ketchum and Ruggiero were present during the altercation, but failed to take any action to stop the altercation or assist him.

Torrez alleges that he sustained various injuries as a result of his involvement in the altercation, including a laceration under his eye and a hematoma near his eye. Torrez has plausibly alleged that he was subjected to conditions that posed a serious risk of harm to his health and safety. Thus, he has met the objective prong of the Eighth Amendment.

Torrez stated that seven inmates, including himself, were involved in the altercation on December 26, 2014. Telephone conversations made by two inmates that occurred on

unidentified dates and involved discussions about "a potential risk of harm to other inmates" are insufficient, however, to have put defendant Lis on notice that Torrez might be harmed in an altercation that involved six other inmates on December 26, 2014. *See Farmer*, 511 U.S. at 838 ("an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment"). Thus, Torrez has not plausibly alleged that defendant Lis possessed culpable intent in failing to determine from telephone conversations of other inmates that he might be subject to harm by those inmates on the date in question. Because Torrez has not alleged sufficient facts to meet the subjective prong of the Eighth Amendment standard, his claim against defendant Lis is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Torrez includes allegations that defendants Ketchum and Ruggiero were present in the area where the altercation between himself and other inmates/detainees occurred and observed the altercation, but failed to intervene to prevent him from being harmed or to break up the altercation. That allegation satisfied the subjective prong of the inquiry. Accordingly, I conclude that Torrez has stated a plausible claim of deliberate indifference to health/safety against defendants Ketchum and Ruggiero.

There are no allegations with regard to any other defendant in connection with the assault that occurred on December 26, 2014. A general allegation that defendants other than Ketchum, Ruggiero or Lis failed to take corrective action after the altercation occurred is conclusory and fails to state a claim of deliberate indifference to safety or failure to protect under the Eighth Amendment. Thus, any allegations of deliberate indifference or failure to protect against defendants Semple, Alves, Hunt, Castro and Archer are dismissed. *See* 28 U.S.C. §

7

1915A(b)(1).

B.    **Deliberate Indifference to Mental Health Needs**

Torrez suggests that during his confinement at MYI from December 26, 2014 to January 6, 2015, the defendants were aware of his mental health conditions and his age and should have confined him in G-Unit which was a mental health housing unit. Torrez does not allege that the altercation that occurred on December 26, 2014 in D-Cottage was at all related to his mental health conditions. Nor does he allege that he could not receive mental health treatment in D-Cottage. He has not asserted that he sought mental health treatment from any defendant or that any defendant denied him mental health treatment. He simply states that mentally ill inmates should not be housed with non-mentally ill inmates. That allegation is insufficient to state a claim that any defendant was deliberately indifferent to his mental health needs. The Eighth Amendment deliberate indifference to mental health needs claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

C.    **Conditions of Confinement**

Torrez states that defendants Castro and Archer placed him on punitive segregation for ten days in connection with his involvement in the altercation that occurred on December 26, 2014. He alleges that during the ten-day period, he remained in his cell for twenty-four hours a day and could not go to recreation, receive mail, make telephone calls, visit the commissary, engage in visitation with individuals from outside the prison or access items of his personal property, including a CD player and a television. Torrez contends that defendants Semple, Alves and Hunt were also involved in the decision to subject him to those deprivations during his ten-day confinement in punitive segregation.[1]

---

[1] Although these allegations suggest that the decision to place Torrez on punitive segregation may

As indicated above, to state a claim of unconstitutional conditions of confinement under the Eighth Amendment, an inmate must satisfy both an objective prong and a subjective prong. See *Farmer*, 511 U.S. at 834, 837. To meet the objective prong, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a "life[] necessity[y]" or a "substantial risk of serious harm." *Id.* at 834 (internal quotation marks and citations omitted). I conclude that a brief lack of access to items of personal property, the commissary, mail, use of the telephone and visitation privileges do not constitute conditions that resulted in deprivations of the basic necessities of Torrez's life. Thus, those conditions do not meet the objective prong of the Eighth Amendments standard.

### 1. Access to Telephone, Mail, Visits and Commissary

---

have been made pursuant to the issuance of a disciplinary report in response to his involvement in the physical altercation with other inmates on December 26, 2014, Torrez does not mention a disciplinary charge, a report or a hearing held pursuant to a charge or report. In addition, he does not refer to the Fourteenth Amendment and does not assert that any defendant violated his procedural due process rights in connection with his placement on punitive segregation. Rather his complaint only asserts violations of his Eighth Amendment rights and his rights under the ADA. Thus, the court does not construe the complaint as asserting a procedural due process claim with regard to this segregation placement. Even if Torrez had asserted that a defendant or multiple defendants had violated his right to Due Process under the Fourteenth Amendment, the facts as alleged do not state a plausible claim under the standard set forth in *Sandin v. Connor*, 515 U.S. 472 (1995), for evaluating Fourteenth Amendment claims related to disciplinary sanctions. In *Sandin*, the Supreme Court explained that in the prison setting, liberty interests protected by Due Process will be "limited to freedom from restraint which. . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 485. The Court held that the conditions of confinement in disciplinary/punitive segregation that Connor had endured for thirty days did not present the type of atypical, significant deprivation in which a State might create a liberty interest. Thus, an inmate has a protected liberty interest only if the disciplinary sanctions caused him to suffer an "atypical and significant hardship" in comparison to "the ordinary incidents of prison life." *Id.*

Here, Torrez alleges that he was sanctioned to ten days in punitive segregation, which does not rise to the level of significant and atypical hardship. *See Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999) (101-day confinement in restrictive housing, while "doubtless unpleasant," did not constitute atypical and significant hardship); *Frazier v. Coughlin*, 81 F.3d 313, 317-18 (2d Cir. 1996) (twelve day confinement in segregation, followed by eleven month confinement in close supervision unit did not state a cognizable claim for denial of due process); *Abrams v. Erfe*, 2018 WL 691714, at *13 (D. Conn. Feb. 2, 2018) ("Abrams' seventeen-day confinement in segregation, falling well short of thirty days, does not, in and of itself, constitute a sufficient deprivation of liberty subject to due process protection."); *Lewis v. Sieminski*, 2010 WL 3827991, at *6 (D. Conn. Sept. 22, 2010) (noting that "decisions in the Second Circuit are unanimous that keeplock or confinement [in segregated housing] for 30 days or less in New York prisons is not 'atypical or significant hardship' under *Sandin*).

Courts have held that inmates have no constitutional right to use the telephone without restrictions. *See Banks v. Argo,* 2012 WL 4471585, at *5 (S.D.N.Y. Sept. 25, 2012) ("[p]risoners do not have an absolute right to make phone calls" (internal quotation marks and citation omitted)); *Shariff v. Coombe* 655 F. Supp. 2d 274, 301 (S.D.N.Y. 2009) (dismissing Eighth Amendment claim regarding inaccessibility of telephones in prison because it did not deny the prisoners "a basic human need."); *Bellamy v. McMickens*, 692 F. Supp. 205, 214 (S.D.N.Y. 1998) (inmates "have no right to unlimited telephone calls" (citation omitted)). In addition, an inmate has no right to buy items from the commissary. *See Vega v. Rell*, 2011 WL 2471295, at *25 (D. Conn. June 21, 2011) (It is well established that "[i]nmates have no constitutional right to purchase items from the prison commissary.") (Citing cases).

The fact that Torrez may have been without mail service for ten days does not constitute a deprivation of a life necessity or basic human need. *See Brooks v. NYC DOC Comm'r*, 2016 WL 4530456, at *6 (E.D.N.Y. Aug. 29, 2016) ("Nor have plaintiffs alleged a sufficiently serious deprivation of their rights because they were sometimes deprived of mail service during the lockdown periods."); *Banks v. Argo*, 2012 WL 4471585, at *6 (S.D.N.Y. Sept. 25, 2012) (dismissing constitutional claims of incarcerated *pro se* plaintiff challenging restriction on telephone calls and mail communications that lasted up to thirteen days); *Jacobs v. Scribner*, 2007 WL 951714, at *5 (E.D. Cal. Mar. 28, 2007), ("deprivation of mail, writing material, and water flow to the toilet at night for sixteen days" did not constitute "conditions that r[o]se to the level of Eighth Amendment violations"), *report and recommendation adopted*, 2007 WL 1614313 (E.D. Cal. June 4, 2007). Nor does a prisoner have an Eighth Amendment right to contact or noncontact visits. *See Overton v. Bazzetta*, 539 U.S. 126, 136-37 (2003) (withdrawal

of visitation privileges for a limited period as a regular means of effecting prison discipline does not constitute a dramatic departure from accepted standards for conditions of confinement); *Green v. Santiago*, 2017 WL 2312355, at *6 (D. Conn. May 26, 2017) (emotional/psychological distress caused by prison officials' denial of inmate's request for contact visits did not "rise to [the level of] the wanton infliction of pain" that is necessary to meet the sufficiently serious deprivation requirement of an Eighth Amendment violation (citation omitted)); *Marrero v. Weir*, 2014 WL 4799228 (D. Conn. Sept. 26, 2014) (no Eighth Amendment violation where plaintiff's phone privileges and all visits from his mother were suspended indefinitely as a disciplinary measure).

The short term conditions that resulted in the denial of access to mail, telephone, commissary and visitation privileges do not constitute deprivations of a basic human need. Thus, the allegations regarding the loss of those privileges for ten days do not state a claim under the objective prong of the Eighth Amendment and are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### 2. Access to Personal Property

Torrez also asserts that defendants Castro, Archer, Semple, Alves and Hunt denied him access to certain items of his property during the ten-day period. The lack of access to his television, CDs and CD player for a temporary period does not constitute a deprivation of any life necessity or human need. *See Ford v. Phillips,* 2007 WL 946703, at *9 (S.D.N.Y. Mar. 27, 2007) (holding that, as a matter of law, minor and temporary deprivations of property, showers and recreation do not violate the Eighth Amendment). Thus, the temporary deprivation of property claim does not meet the objective element of the Eighth Amendment standard and is dismissed.[2] *See* 28 U.S.C. § 1915A(b)(1).

---

[2]Torrez does not allege that the deprivation of property violated his Fourteenth Amendment due

### 3. Access to Recreation

The allegation that defendants Semple, Alves, Hunt, Castro and Archer denied Torrez recreation time for ten days may be construed as a denial of the basic human need to exercise. The Supreme Court has identified exercise as a human need protected by the Eighth Amendment. *See Wilson v. Seiter,* 501 U.S. 294, 304 (1991). The Second Circuit has held that prisoners possess an Eighth Amendment right to the opportunity to exercise. *See Williams v. Greifinger,* 97 F.3d 699, 704 (2d Cir. 1996). Here, however, Torrez claims only a temporary restriction on recreation and fails to allege facts showing that the restriction resulted in a severe deprivation. Although a deprivation of all opportunities to exercise over a substantial period of time might state a violation of the Eighth Amendment, courts have held that depriving a prisoner of exercise for a relatively brief period of time does not violate the Eighth Amendment. *See, e.g., Branham v. Meachum*, 77 F.3d 626, 630–31 (2d Cir.1996) (holding that keeping plaintiff on full restraint status without outdoor recreation for 22 days does not state an Eighth Amendment claim); *Riddick v. Arnone*, 2012 WL 2716355, at *5 (D. Conn. July 9, 2012) (concluding that denial of exercise for 10 days is *de minimis* and does not rise to the level of an Eighth Amendment violation); *Gamble v. City of New York ex rel. NYC Department of Correction*, 2009 WL 3097239, at *4-5 (S.D.N.Y. Sept. 25, 2009) (Although "[d]eprivations of exercise must be limited to unusual circumstances or situations where restrictions are needed for disciplinary reasons ... [,] [s]poradic infringement of the right to exercise does not rise to the level of . . . a

---

process rights. Nor does he allege that he did not receive the confiscated items of property back after he served his time in punitive segregation. Even if Torrez has asserted a claim of permanent loss or destruction of property, "[a] prisoner may challenge the deprivation of property in a § 1983 action only if the State provides no adequate post-deprivation remedy." *Edwards v. Erfe*, 588 F. App'x 79 (2d Cir. 2015) (citing *Hudson v. Palmer,* 468 U.S. 517, 533 (1984)). Connecticut provides inmates with a remedy for lost or destroyed property. *See* State of Connecticut Department of Correction Administrative Directive 9.6(16) (Aug. 15, 2013); Connecticut General Statutes § 4–141 *et seq.*

constitutional deprivation."); *Houston v. Goord*, 2009 WL 890658, at *4 (N.D.N.Y. Mar. 31, 2009) (holding plaintiff's Eighth Amendment claim not cognizable because the denial of outdoor activity for less than two weeks was *de minimis)*; *Davidson v. Coughlin*, 968 F. Supp. 121, 131 (S.D.N.Y. 1997) (holding that deprivation of exercise for 14 days did not violate the Eighth Amendment).

Because Torrez has alleged that he was denied recreation for a period of only ten days, he has not stated a plausible Eighth Amendment claim. The claim regarding recreation is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## II. Section 1983 - Good Time Credits – Individual and Official Capacities

Torrez includes an allegation that at the time that defendants Castro and Archer placed him in punitive segregation for ten days, he also lost good time credits. A loss of good time credits is not a condition of confinement. Rather good time credits reduce the overall duration of an inmate's sentence or confinement. *See* State of Connecticut Administrative Directive 4.2(3)(I) & (S) (Aug. 28, 2012), available at www.ct.gov/dos/LIB/doc/PDF/AD/ad402.pdf ("Credit" is defined as "[a] unit of time that shortens the remaining term of imprisonment. . . . [and] Good Time" is defined as "[a] time credit for good behavior or good performance.") A challenge to the duration of an inmate's sentence must be made in a petition for writ of habeas corpus. *See Prieser v. Rodriguez*, 411 U.S. 475, 489 (1973) (when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate or speedier release, his sole federal remedy is in habeas corpus).

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that when a state prisoner seeks damages in a section 1983 action, "the district court must consider whether a

judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction and sentence and if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court concluded that the holding of *Heck* applies to a prisoner's challenge to the procedures used in a proceeding that results in a change to the prisoner's sentence, including the loss of accumulated good-time credits. *See id.* at 648. Thus, a prisoner may not proceed with a section 1983 action challenging a sanction that affects the length of his or her sentence "unless he [or she] has shown that the sanction . . . ha[s] been overturned through administrative channels or by a state or federal court." *Peralta v. Vasquez*, 467 F.3d 98, 100 (2d Cir. 2006).

Torrez does not allege that he challenged the loss of his good time credits in a habeas petition in state court or that the decision to forfeit his good time credits has been otherwise overturned. Thus, he cannot proceed to the extent that he seeks damages for the loss of good time credits that he incurred in connection with his placement in punitive segregation after the December 26, 2014 altercation. The claim related to the loss of good time credits is dismissed without prejudice. *See* 28 U.S.C. § 1915A(b)(1).

### III. ADA Claims

In addition to his claims that the defendants violated his rights under the Eighth Amendment, Torrez alleges that he suffers from mental health disability and that defendants Semple, Alves, Hunt, Castro and Archer discriminated against him in violation of his rights under the ADA. *See* Compl., Doc. No. 1 at ¶ 42. The purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals

14

with disabilities." 42 U.S.C. § 12101(b)(1). The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Supreme Court has held that Title II of the ADA is applicable to state prisons. *See Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998) (holding that "[s]tate prisons fall squarely within the statutory definition of 'public entity'").

To state a claim under the ADA, a plaintiff must plead "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003). Most importantly, a plaintiff must allege that his mistreatment was motivated by either discriminatory animus or ill will due to disability. *See Elbert v. N.Y. State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 594-95 (S.D.N.Y. 2010) (citing *Garcia v. S.U.N.Y. Health Sciences Ctr. Of Brooklyn*, 380 F.3d 98, 112 (2d Cir. 2001)).

An inmate may not maintain an ADA claim against a state actor in his or her individual capacity. *See Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (Title II of the Americans with Disabilities Act does not provide "for individual capacity suits against state officials."); *Morales v. New York*, 22 F. Supp. 3d 256, 271 (S.D.N.Y. 2014) (there is no individual liability under the Americans with Disabilities Act). Thus, the ADA claim asserted against the defendants in their individual capacities is dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1). The court considers the ADA claim as asserted

15

against the defendants in their official capacities.

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(2)(A). When analyzing claims, "courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities." *Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 852 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998)).

Torrez claims that he has been classified as "seriously mentally ill individual," who has been "diagnosed with several mental health disorders such as bipolar disorder, depression, post-traumatic stress disorder, attention deficit disorder, attention deficit hyperactive disorder and conduct disorder." Compl., Doc. No. 1 at ¶¶ 12-13. He states that he has taken medication to treat his conditions and has undergone therapy, and that he has suicidal ideations and "engages in acts of self-harm." *Id*. at ¶¶ 14-15. Although that may be sufficient to show that his mental health conditions substantially limit one or more of his major life activities, Torrez's complaint does not meet the remaining prongs of the ADA standard.

Under the second element of a Title II ADA claim, the court considers whether any defendant has denied Torrez the opportunity to participate in or benefit from Department of Corrections' services, programs, or activities, or has otherwise discriminated against him, by reason of his mental disorders. "[T]he relevant inquiry asks not whether the benefits available to persons with disabilities and to others are actually equal, but whether those with disabilities are as a practical matter able to access benefits to which they are legally entitled." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003).

Torrez generally asserts that defendants Semple, Alves, Hunt, Castro and Archer have not afforded him "reasonable accommodations" by virtue of his confinement "in restrictive conditions and not in the most integrated setting appropriate for his needs." Compl., Doc. No. 1 at ¶¶ 43-47. He does not specify any service, program or activity from which he was excluded by the defendants. Thus, he does not meet the second requirement of the ADA standard.

Furthermore, to meet the third requirement of the ADA standard, Torrez must have been denied or excluded from benefits *by reason of* a disability, rather than for some other legitimate (*e.g.*, security) purpose. *See Beckford v. Portuondo*, 151 F. Supp. 2d 204, 220 (N.D.N.Y. 2001) ("To conclude that Defendants placed [the plaintiff] in a cell that was not wheelchair equipped because of an overt intent to deprive him of a service, program, or activity by reason of his disability stretches all bounds of credibility. Plaintiff was placed in a cell not containing wheelchair accommodations because he was a danger to other inmates and officers."). Torrez concedes that the restrictive conditions in punitive segregation were due to "non-medical and mental health reasons." Compl., Doc. No. 1 at ¶ 49. Torrez does not allege that the defendants treated or sanctioned him in a different way than they treated or sanctioned any other inmate who was involved in a physical altercation. His claim is that he should have been treated differently because of his disability. This allegation does not meet the third requirement of an ADA claim. Thus, Torrez has not alleged that the defendants excluded him from or denied him the benefits of any services, programs or activities because of his disability. *See Elbert v. N.Y. State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 596 (S.D.N.Y. 2010) ("Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical [or mental health] treatment, but do not allege that the inmate was treated differently because of his disability."); *Atkins v. County of Orange*,

251 F. Supp. 2d 1255, 1232 (S.D.N.Y. 2003) (dismissing claim of mentally-disabled inmates challenging placement in isolation because complaint contained no allegations showing absence of even-handed treatment; inmates did not "allege that violent and self-destructive inmates who are disabled due to mental illness are treated any differently than violent, self-destructive inmates who are not disabled due to mental illness").

Because Torrez does not allege that the defendants denied him treatment or participation in various programs or activities or otherwise discriminated against him because of his mental health conditions, he fails to state a claim under the ADA. The ADA claim against defendants Semple, Alves, Hunt, Castro and Archer in their official capacities is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## IV. State Law Claim

Included in the description of the ADA claim, is an allegation that by restricting his visitation privileges and telephone and mail use "for non-medical and mental health reasons," defendants Semple, Alves, Hunt, Castro and Archer violated the "Connecticut Patients' Rights." Compl. ¶ 49. The court assumes that Torrez is referring to the provisions of Conn. Gen. Stat. § 17a-540 *et seq.*, known as the Connecticut Patients' Bill of Rights. The Connecticut Supreme Court has held that the provisions of that law do not apply to state correctional institutions. *See Riddick v. Chevalier*, 2013 WL 4823153, at *2 (D. Conn. Sept. 9, 2013) (citing *Wiseman v. Armstrong*, 850 A.2d 114, 115 (Conn. 2004)). Accordingly, the claim under the Connecticut Patients' Bill of Rights is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**It is hereby ordered that:**

(1) The Eighth Amendment deliberate indifference to mental health needs claims and

the Fourteenth Amendment claim related to the loss of good time credit asserted against all defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) and the Eighth Amendment deliberate indifference to safety/failure to protect claims, the Eighth Amendment conditions of confinement claims, the ADA claim and the state law claim related to the Connecticut Patients' Bill of Rights asserted against defendants Semple, Alves, Hunt, Castro, Archer, and Lis are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). Thus, all claims against defendants Semple, Alves, Hunt, Castro, Archer, and Lis have been **DISMISSED**.

The Eighth Amendment deliberate indifference to safety and failure to protect claims will proceed against defendants Ketchum and Ruggiero in their individual and official capacities. The Motion to Expedite Initial Review Order [**ECF No. 10**] is **DENIED**.

(2) Within twenty-one (21) days of this Order, the Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal's Service. The U.S. Marshals Service shall serve the summons, a copy of the complaint and this order on defendants Ketchum and Ruggiero in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(3) Within twenty-one (21) days of this Order, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for Correctional Officer Todd Ketchum and Correctional Officer Ruggerio and mail a copy of the complaint, this order and a waiver of service of process request packet to each defendant in his individual capacity at his current work address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service

19

and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4)     Defendants Ketchum and Ruggerio shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

(7)     The Pro Se Prisoner Litigation Office shall send a courtesy copy of the complaint and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

So ordered.

Dated at Bridgeport, Connecticut, this 21st day of May 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge